UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:14-CR-76 |
| v. ) | |
| ) | JUDGE GREER |
| ROBERT S. MCGREGOR ) | Plea Agreement Under Rule 11c1C |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Robert S. McGregor, and the defendant's attorney, Randall C. Eads, have agreed upon the following:

1. The defendant will plead guilty to the following count in the indictment:

    a) Count One. Conspiring to commit wire fraud and mail fraud in violation of 18 U.S.C. §§ 1349, 1341, and 1343.

    The punishment for this offense is as follows. A maximum term of imprisonment of 20 years; a maximum fine of $250,000; up to three years on supervised release; $100 special assessment; forfeiture of the fruits and instrumentalities of the offense; and restitution as ordered by the court.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. The defendant is pleading guilty because the defendant is in fact guilty.

4.  In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

   a.  At all times relevant to the indictment, New Century Coal operated out of offices located in Johnson City, in the Eastern District of Tennessee.

   b.  Prior to 2011, the defendant Robert S. McGregor worked for Brian C. Rose at a business known as Earth Energy Exploration which was located in Jeffersonville, Indiana and in New Albany, Indiana. In 2011, Brian Rose asked Robert McGregor to help Rose establish New Century Coal in Johnson City, Tennessee. McGregor agreed and moved to Johnson City, where he temporarily lived with Ray Spears.

   c.  In 2011, Brian C. Rose caused a corporation known as New Century Coal to become organized under the laws of the State of Nevada and established an office for New Century Coal at 1009 Lark Street, Johnson City, Tennessee. Rose also acquired interests in real property located at Wesinpar Drive and Bristol Highway in Johnson City. Brian C. Rose was the developer, leader, and decision-maker for New Century Coal from January 1, 2011 through June 30, 2014. New Century Coal was a fraud scheme based upon the promised development of "Blue Gem" coal.

   d.  McGregor and others marketed New Century Coal as an issuer/sponsor of partnerships with individual investors for the purpose of placing investors in limited liability partnerships in specific coal mine operations, and as the partnership mine operator of each specific coal mine. Each offering was limited to a small number of shares for a high investment, assigned to a specific coal mine.

e.  As part of the scheme, McGregor and others distributed via United States mail and private interstate carrier documents which included private placement memoranda (purporting to disclose risks and hazards to potential investors), investor suitability questionnaires (purporting to gauge investors' suitability for investment in the coal mines), a combined turnkey mining development agreement and mine operating contract (purporting to provide assurance to the investor that s/he has actually invested in a coal mine which will soon produce coal), and a subscription agreement (purporting to give the investor an ownership interest in a viable coal mine and other valuable rights in the operation of the mine and oversight of the investment).

f.  At times relevant to the indictment, defendant Robert S. McGregor made false and fraudulent representations to potential and existing investors, and solicited sales of shares in New Century Coal and its various coal mines.

g.  New Century Coal never produced coal, never made any sales of coal, and never made any legitimate return on investment to its investors. Brian Rose never intended to produce coal and never intended to return investment to the investors in New Century Coal. The purpose of New Century Coal was to defraud investors. Defendant Robert S. McGregor was aware of the foregoing.

h.  Robert S. McGregor worked for New Century Coal as a closer who was directly involved with potential investors and existing investors. On different occasions, McGregor told potential investors that he was "Jim Robinson, III", the son of then-president James Robinson. McGregor made these false statements in order to falsely enhance the business reputation of New Century Coal and its leadership.

i.  During the course of the conspiracy, McGregor was directly involved in the investment of more than $2 million made by individuals who reside in Mountain Grove, Missouri

3

and travelled to meet with these individual investors, including trips to Mountain Grove, Missouri; London, Kentucky; and Knoxville, Tennessee.

j. In 2011, Brian Rose introduced McGregor to Dallas McRae, who became titular president of New Century Coal. James Robinson began to work at New Century Coal and was made titular president after Dallas McRae served as president. In order to bolster the integrity and history of New Century Coal, Rose directed McGregor to represent himself as Jim Robinson III (i.e., Robinson's son) when meeting with potential investors.

k. Brian Rose repeatedly told McGregor and others that he intended to take New Century Coal "public" through an offering listed on the Toronto, Canada stock exchange. Rose told McGregor and others that they would receive shares in the publicly-listed corporation which would make them independently wealthy if they complied with his business plan.

l. When the Securities and Exchange Commission Enforcement Division initiated a request for the production of documents in August 2012, Brian Rose became concerned that his role in NCC would be revealed to the Securities and Exchange Commission, which would enjoin the company from further sales. Rose devised an elaborate plan to conceal his role, his father's role, and the fraudulent nature of the company from the Securities and Exchange Commission Enforcement Division. Hugh Sackett assisted Rose in this plan, which included the following:

1) Dallas McRae was the first NCC witness to testify before the Securities and Exchange Commission Enforcement Division, on November 7, 2013. Prior to his deposition, McRae met with Brian Rose, Hugh Sackett, Robert McGregor and others in order to prepare false testimony which would be consistent with false documents prepared by Hugh Sackett and others' false testimony.

4

2) Hugh Sackett was the second NCC witness to testify before the Securities and Exchange Commission Enforcement Division, on April 24, 2014. Prior to his deposition, Sackett met with Brian Rose, David Rose, Dallas McRae, Robert McGregor, James Robinson, and others in order to prepare false testimony which would be consistent with false documents and others' false testimony.

3) Robert McGregor was the third NCC witness to testify before the Securities and Exchange Commission Enforcement Division, on April 29, 2014. Prior to his deposition, McGregor met with Brian Rose, David Rose, Hugh Sackett, Dallas McRae, James Robinson, and others in order to prepare false testimony which would be consistent with false documents and others' false testimony.

4) The Securities and Exchange Commission Enforcement Division notified New Century Coal that it intended to depose James Robinson, who was NCC titular president at that time, after McGregor's deposition on April 29, 2014. Robinson met with Brian Rose, David Rose, Hugh Sackett, Dallas McRae, Robert McGregor, and others in order to prepare false testimony which would be consistent with false documents and others' false testimony. Because the Securities and Exchange Commission Enforcement Division cancelled Robinson's deposition, Robinson did not testify before the Securities and Exchange Commission Enforcement Division.

5) At all of the foregoing witness preparation meetings, McGregor, Brian Rose, David Rose, Hugh Sackett, Dallas McRae, James Robinson, and others openly discussed the need to avoid disclosing the involvement of Brian Rose or David Rose in New Century Coal, because of their prior involvement with fraudulent investor schemes.

m. Brian Rose diverted New Century Coal investor funds away from the exploration, development, and production of coal as promised to New Century Coal investors.

5

Brian Rose used investor funds to compensate New Century Coal associates, including the defendant Robert S. McGregor, who used a vendor account known as Appalachian Energy Group.

n. During the course of the conspiracy, defendant Robert S. McGregor agreed to commit wire fraud and mail fraud on investors in New Century Coal. Robert S. McGregor knew the unlawful purpose of the fraud scheme and willfully joined the scheme. Robert S. McGregor and others, including but not limited to his co-defendants, pursued a scheme to defraud investors, to obtain money or property by materially false pretenses, and willfully participated in the scheme with knowledge of its fraudulent nature. At all relevant times, Robert S. McGregor acted with the intent to defraud New Century Coal investors. At all relevant times, Robert S. McGregor directed, arranged, and caused the interstate transmission of writings, signals, and sounds by wire and the shipment of documents by private and public mails which advanced, furthered, and carried out the scheme to defraud.

5. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

    g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum;

    b) The Court will impose special assessment fees as required by law; and

    c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea. The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. The parties agree to the following terms for purposes of calculating the defendant's Advisory Guideline Range under the United States Sentencing Guidelines:

    a. The base offense level under U.S.S.G. § 2B1.1(a) is 7;

    b. The loss amount for purposes of U.S.S.G. § 2B1.1(b)(1) is more than $1 million, which yields an increase of 16 offense levels;

    c. The offense involved more than ten victims (but less than fifty victims) for purposes of U.S.S.G. § 2B1.1(b)(2), which yields an increase of 2 offense levels;

d. The defendant will <u>not</u> be assessed the following sentencing enhancements:

   1) The sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(c);

   2) The vulnerable victim enhancement under U.S.S.G. § 3A1.1;

   3) The manager/supervisor/organizer/leader enhancement under U.S.S.G. § 3B1.1

8. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense, including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

9. The defendant agrees to pay the special assessment in this case prior to sentencing.

10. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of Title 18, United States Code, Section 981(a)91)(C) and Title 28,

8

Case 2:14-cr-00076-JRG-MCLC Document 352 Filed 10/25/15 Page 8 of 12 PageID #: 2200

United States Code, Section 2461(c) and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees. The defendant agrees to forfeit the defendant's interest in properties as set forth in a separate agreed preliminary order of forfeiture. The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties set forth in the agreed order of forfeiture and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

11. The defendant agrees that the court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victims of any offense charged in this case (including dismissed counts); and (2) the victims of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offenses.

12. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amounts shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the

authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a)    If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

    b)    The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    c)    If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

13.    a)    In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the

offense committed, the defendant agrees not to file a direct appeal of the defendant's conviction or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the district court or above any mandatory minimum sentence deemed applicable by the district court, whichever is greater.

      b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

14. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including but not limited to failing to enter guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

15. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. If additional terms are included in the Supplement, they are hereby fully incorporated herein.

16. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

WILLIAM C. KILLIAN
UNITED STATES ATTORNEY

10-25-2015
Date

By: *Helen Smith*
HELEN C.T. SMITH
Assistant United States Attorney

10/23/15
Date

*[signature]*
ROBERT S. MCGREGOR
Defendant

10/23/15
Date

*Randall C. Eads*
RANDALL CAMERON EADS
Attorney for the Defendant

12